bb

**John J. Coleman, PhD**
**6981 Tepper Drive**
**Clifton, VA 20124-1600**

**Tel: 703-502-9307**
**Email: jcoleman30 a cox.net**

November 9, 2011

Clerk
U.S. Court of Appeals, Fourth Circuit
1100 East Main Street, Suite 501
Richmond, VA 23219

> In re: <u>No. 11-1999, John Coleman v. Drug Enforcement Administration</u>
> <u>(DEA)/ 1:10-cv-927 – GBL-IDD</u>

Dear Clerk of the Fourth Circuit Court of Appeals:

Enclosed herewith are two copies of my Informal Reply Brief to be filed in the above cited case. Please stamp as filed and return one of the copies in the self-addressed stamped envelope enclosed. I have served the U.S. Attorney's Office (attn.: AUSAs Yiris E. Cornwall and Julie Ann Edelstein) with copies of the Informal Reply Brief.

Thank you and best wishes.

Sincerely,

John J. Coleman, PhD
Plaintiff-Appellant, *Pro se*

# FILED

NOV 1 4 2011

**U.S. Court of Appeals**
**Fourth Circuit**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **John J. Coleman,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | |
| *v.* | ) | **No. 11-1999.** |
| | ) | **District Court No. 1:10cv927** |
| **U.S. Drug Enforcement** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |
| | ) | |

## PLAINTIFF-APPELLANT'S INFORMAL REPLY BRIEF
## TO APPELLEE'S INFORMAL RESPONSE
## TO APPELLANT'S OPENING BRIEF

Plaintiff-Appellant John J. Coleman ("Coleman"), a non-attorney proceeding *Pro se* in

this matter, hereby respectfully submits this informal reply brief in opposition to Defendant-

Appellee U.S. Drug Enforcement Administration's ("DEA," "agency," or "Government")

informal response brief to Plaintiff-Appellant's informal opening brief.

### RESTATEMENT OF ISSUES

The issues in this case can be distilled to two that, in turn, likely determine the fate of the

others. They are based on conclusions[1] reached by the district court in granting summary

judgment for the Government:

1.  The first is whether Coleman failed to exhaust his administrative remedies by failing to
    appeal a fee waiver denial issued by the agency while litigation was pending.

---

[1] See Dkt. #23, Memorandum Order at 10, *viz.*, "The Court grants Defendant's motion for summary judgment because (1) Plaintiff has failed to pay the required fees, and (2) Plaintiff's administrative remedies are not yet exhausted."

1

2. The second is whether the failure of the agency to respond timely to Coleman's appealed FOIA request as well as to Coleman's timely filed fee waiver request entitled Coleman to seek judicial review.

## ARGUMENTS

In view of the Government's informal response brief (Appeal Document #10) and the administrative and judicial records of this case, we respectfully ask that the Fourth Circuit Court of Appeals ("Court") consider the undisputed facts in this case and rule for Coleman as a matter of law. We use this opportunity to provide the Court with this informal reply brief to highlight key provisions of the Freedom of Information Act ("FOIA") that, we believe, were violated by the Government in this case.

The judicial record before the Court shows that constructive exhaustion of administrative remedies prevailed in this case by reason of 5 U.S.C. § 552(a)(6)(A)(ii):

> "[Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall--
> ...]
> (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection."

The effect of this provision of the statute on the question of exhaustion of administrative remedies was addressed by this Court in *Pollack v. U.S. Dep't. of Justice*, 49 F.3d at 118-19, *viz.:*

> "Under FOIA's statutory scheme, when an agency fails to comply in a timely fashion with a proper FOIA request, it may not insist on the exhaustion of administrative remedies unless the agency responds to the request before suit is filed."

Coleman filed suit in the district court on August 19, 2010. By letter dated September 29, 2010, the Government responded to Coleman's FOIA request that had been timely appealed and

2

remanded to the agency by the appellate authority (Office of Information Policy or "OIP") for

reprocessing. The letter also denied Coleman fee waiver request of April 22, 2010, *viz.*:

> "This letter is in further response to your Freedom of Information Act (FOIA) request
> dated February 29, 2008, assigned DEA FOIA Request No. 08-0708, which is the subject
> of the above referenced litigation, the remand of your appeal to the Department of
> Justice, Office of Information Policy (OIP), and your letter dated April 22, 2010,
> addressed to the Drug Enforcement Administration (DEA), Freedom of Information
> Operations Unit (SARO). (Y)our request …to waive fees is denied."

The district court relied on this letter to reach its conclusion that "Plaintiff (Coleman)

failed to exhaust all remedies by failing to appeal the DEA's denial of a fee waiver." (See Dkt

#23, Memorandum Order at 7)

In framing our rebuttal to the district court's conclusion, we rely upon this Court's

finding in *Pollack* whose facts in a similar issue mirror those of the instant case:

> "Since in this case the Department of Justice did not respond to Pollack's request before
> suit was filed, it may not insist by reason of *Oglesby* that administrative remedies be
> exhausted. See *Oglesby*, 920 F.2d at 61."

Contrary to the factual record, the Government's informal response brief relies on DEA's

July 14, 2009 letter to contest Coleman's claim of constructive exhaustion of administrative

remedies. See Appeal Document #10 at 25, *viz.*:

> "Contrary to Coleman's contention, the DEA *did* respond to his FOIA request before he
> filed suit in district court on August 19, 2010, by letter dated July 14, 2009. R.1, exhibit
> 3. *See Pollack*, 49 F.3d at 118 ('Under FOIA's statutory scheme, when an agency fails to
> comply in a timely fashion to a proper FOIA request, it may not insist on the exhaustion
> of administrative remedies, *unless the agency responds to the request before suit is
> filed.*')" (Emphasis as in referenced source)

In presenting the above, the Government's brief neglected to inform the Court that the

July 14, 2009 response cited above pertained to the agency's written denial of Coleman's FOIA

request. It had been timely appealed to OIP as to the agency's estimated fee and Coleman's fee

categorization. By letter dated March 29, 2010, OIP advised Coleman of the following:

3

"On the basis of all the information available to this Office, including the Department of Justice regulations that implement the Freedom of Information Act, 28 C.F.R. Part 16, Subpart A, and the administrative record with regard to this request, I have determined that DEA's action was not consistent [with] 28 C.F.R. § 16.11(b)(1) (2009) or 28 C.F.R. § 16.11(e). Therefore, I am remanding your request for reprocessing, including further consideration of your fee category." (See PEX #8, OIP appeal decision letter, dated March 29, 2010, by Associate Director Janice Galli McLeod)

According to 5 U.S.C. § 552(a)(6)(A)(ii), DEA had twenty business days from its receipt of OIP's letter of March 29, 2010, to respond to Coleman's remanded FOIA request. DEA failed to respond within this time limit or before suit was filed. Moreover, according to 5 U.S.C. § 552(a)(6)(C)(i):

"Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." [Emphasis added]

Thus, by the time suit was filed Coleman had constructively exhausted his administrative remedies with respect to his appealed FOIA request and was entitled by the statute to seek review by the district court.[2]

The fee issue in this case has two parts to it. The first involves the initial estimate of $1,780.75 provided by the agency in its July 14, 2009 letter that denied Coleman's FOIA request. The agency's denial, its estimated fee and its determination of Coleman's fee categorization were timely appealed to OIP. Upon receiving OIP's decision letter of March 29, 2010, Coleman wrote to the agency on April 22, 2010, attached a copy of the OIP decision letter, and, among other things, requested a fee waiver of search and duplication costs, stating in the same sentence, parenthetically, that "review cost is no longer applicable." Coleman's fee waiver

---

[2] See also U.S. Department of Justice Guide to the Freedom of Information Act. (June 2009 ed.). p 740, viz., "The FOIA permits requesters to treat an agency's failure to comply with its specific time limits as full, or 'constructive,' exhaustion of administrative remedies."

request is the second part of the two-part fee issue left unresolved by the agency during the administrative phase of this case.

In its defense of the agency's failure to respond to Coleman's fee waiver request of April 22nd, the Government's informal response brief provided this somewhat confused series of statements:

> "Moreover, Coleman can point to no requirement that the DEA respond to an administrative appeal letter – Coleman's April 22, 2010 – within any statutory period of time, nor can he point to any authority which provides that if an agency does not respond to an appeal letter prior to plaintiff filing suit, plaintiff is excused from the requirement to pay fees. Accordingly, the district court correctly entered summary judgment in favor of the DEA on the basis that Coleman failed to pay assessed fees." (Appeal Document #10, at 25)

The only "administrative appeal letter" by Coleman in the record is dated July 31, 2009, not April 22, 2010, and was sent by Coleman to OIP, not DEA. It appealed DEA's July 14, 2009 denial of Coleman's FOIA request.

The April 22nd letter referred to above was sent by Coleman to DEA shortly after Coleman received OIP's appeal decision letter of March 29, 2010. The April 22nd letter included a copy of the OIP decision letter and, among other things, requested a fee waiver of search and duplication fees in the public interest. As stated previously, Coleman's request for a fee waiver parenthetically noted that "'review' cost is no longer applicable." See PEX #9, Coleman to DEA letter dated April 22, 2010, viz.:

> "I would like to propose a reasonable settlement of this matter that I believe is both fair and justified. In return for waiving all fees for search and duplication ("review" cost is no longer applicable), I will consider the matter resolved satisfactorily. If the file material should exceed the number of pages normally provided without charge, I am willing to forego your having to duplicate the additional materials if you will allow me to review

them at your reading room at DEA's headquarters in Arlington, VA.[3] You may, instead, send me a revised estimate if you are unable to waive all costs."

Coleman's April 22nd letter was and remains primarily a fee waiver request and it was based on determinations by OIP that Coleman believed enhanced his prospects for a fee waiver.[4]

According to the *U.S. Department of Justice Guide to the Freedom of Information Act,* June 2009 ed., p.138:

"(C)ourts have found that where the agency fails to address a pending fee waiver request before a requester proceeds to litigation under a constructive exhaustion theory, actual appellate administrative exhaustion by the requester is not required."[5]

Moreover, in the instructions for FOIA requesters provided by DEA's website we find the following:

"The best advice to requesters is to be patient. The law allows a requester to consider that his or her request has been denied if it has not been decided within the time limits. This permits the requester to file an administrative appeal or file a lawsuit in federal district court."[6] [Emphasis added]

---

[3] In reviewing the D.C. Circuit Court of Appeals' decision in *Oglesby v. Department of the Army,* 920 F.2d 57 (D.C. Cir.1990), Coleman noted the following information in a Department of Justice FOIA Update notice pertaining to *Oglesby:* "In reaching its administrative exhaustion holdings, the D.C. Circuit specifically found such a disclosure to be 'adequate under the FOIA,' thereby suggesting that agencies may satisfy their FOIA obligations merely by making records 'available' to requesters in a 'reading room' fashion, instead of being compelled to send out disclosable record copies, upon request, through the mail." (See Department of Justice, FOIA Update, Vol. XII, No. 2, 1991, available at: http://www.justice.gov/oip/foia_updates/Vol_XII_2/page2.htm .) Public Reading Rooms, *per se,* containing FOIA information are also described in 21 C.F.R. §16.2.

[4] According to DEA's FOIA Instructions, "Any requester may ask for a fee waiver. Some will find it easier to qualify than others. A news reporter who is only charged duplication costs may still ask that the charges be waived because of the public benefits that will result from disclosure. A representative of the news media, a scholar, or a public interest group are more likely to qualify for a waiver of fees. A commercial user may find it difficult to qualify for waivers." [Emphasis added] Available at: http://www.justice.gov/dea/foia/information.htm().

[5] [Cited as footnote in DOJ Guide to FOIA] See *Judicial Watch,* 326 F.3d at 1310 (reiterating in fee waiver context that when requester has "constructively exhausted" due to agency's failure to timely respond to request he "may seek judicial review immediately"); *Judicial Watch,* 2005 WL 1606915, at *3 (finding that requester "may proceed directly to federal court to enforce . . . a de novo review of a fee waiver request" where he did not timely receive agency decision on request).

[6] See DEA, *FOIA Information: Requirements for Agency Responses,* available at: http://www.justice.gov/dea/foia/information.htm.

After almost four months, when DEA failed to respond to Coleman's April 22, 2010 fee waiver request, Coleman concluded, according to the aforementioned DEA instruction, that his fee waiver request had been denied and, as permitted by the DEA, he either could file an administrative appeal or file a lawsuit in federal district court. Coleman chose the latter in view of the agency's ongoing failure to respond to his appealed and remanded FOIA request.

Next, we address the statement in the Government's response brief to the effect, "(N)or can he (*i.e.*, Coleman) point to any authority which provides that if an agency does not respond to an appeal letter prior to plaintiff filing suit, plaintiff is excused from the requirement to pay fees." (See Appeal 11-1999, Document #10, at 25) This poorly worded straw man misrepresents Coleman's position. Contrary to DEA's groundless assertion, Coleman has never demanded or asserted with or without authority that he was entitled to be excused from the requirement to pay fees because the agency failed to respond to his appeal letter. This is an attempt by the Government to further paint Coleman's case as being similar with the case of *Pollack* in which such an unsupportable claim was made. Coleman has requested the agency and the court to waive or reduce fees in the public interest and in view of the excessive delay.[7]

The issue before this Court is not whether Coleman believes that he should be excused from the requirement to pay fees because the agency did not respond to an appeal letter, but whether he constructively exhausted his administrative remedies before suit was filed. If the

---

[7] In Coleman's Complaint (Dkt. #1), he included the following request to the district court: "Order defendant to waive all fees for processing plaintiff's request in view of excessive and unlawful delay." In filing his Complaint in 2010, Coleman, a non-attorney, was following a template of a FOIA request that apparently assumed the request in question had been filed subsequent to December 2008 when an amendment to the FOIA that allowed the district court to excuse some fees because of excessive delay took effect. Coleman's FOIA request was filed in February 2008, before this provision in the 2007 Act became effective. It is disingenuous for the Government to seize upon this very technical error in Coleman's Complaint in order to compare Coleman's case with *Pollack*. It is even more disingenuous for the Government to use a reference to this to diminish or otherwise deflect the consequences of its not having responded to Coleman's appealed and remanded FOIA request before suit was filed. The agency's failure in this regard had nothing whatsoever to do with Coleman's request to the district court in the exercise of its administrative authority as a court of equity to excuse fees because of excessive delay.

Court's finding with respect to this issue is consistent with its decision in *Pollack*, as discussed in Coleman's opening brief, then the district court erred in granting summary judgment on this issue. (See *Pollack* at 115-119)

If the district court erred, then by reason of *Pollack, Oglesby,* the *Department of Justice Guide to the FOIA,* and the statute, Coleman argues that, by statute, he was entitled to a *de novo* review by the district court of the unanswered fee waiver request, as well as a *de novo* review of other issues, notably, his unanswered appealed and remanded request. In addition, Coleman argues, the district court's review of these issues should have been made on the basis of the administrative record before the agency when suit was filed and that it was improper for the district court to permit either party to supplement the administrative record while litigation was pending. (See the *U.S. Department of Justice Guide to the Freedom of Information Act,* 2009 ed., p. 139, *viz.*:

> "As part of the Freedom of Information Reform Act of 1986, a specific judicial review provision for fee waivers was added to the FOIA, which provides for the review of agency fee waiver denials according to a *de novo* standard, yet explicitly provides that the scope of judicial review remains limited to the administrative record established before the agency. Thus, courts have not permitted either party to supplement the record or offer new argument or rationale for seeking a fee waiver or for denying such a request."[8] (Internal citations omitted) (Emphasis added)

---

[8] See, e.g., *Friends of the Coast Fork,* 110 F.3d at 55 (reiterating that agency's letter "must be reasonably calculated to put the requester on notice" as to reasons for fee waiver denial); *Larson,* 843 F.2d at 1483 (information not part of administrative record may not be considered by district court when reviewing agency fee waiver denial); *Manley,* 2008 WL 4326448, at *3 (concluding that when agency administratively determined that plaintiff's request met factor one, it could not raise "post hoc rationalization . . . to deny plaintiff's request on this first factor" during litigation); *Physicians Comm. for Responsible Med.,* 480 F. Supp. 2d at 121 n.1 (disallowing plaintiff's submission of affidavit that was not part of administrative record); *Citizens for Responsibility & Ethics in Wash.,* 481 F. Supp. 2d at 107 n.1 (refusing to take into account material submitted by both parties that were not before agency when administrative appeal considered); *Brown,* 445 F. Supp. 2d at 1354 (observing that "administrative record should consist of those documents which [agency] used to determine whether Plaintiff's fees should be waived"); *Pub. Citizen,* 292 F. Supp. 2d at 5 (criticizing agency for its failure to adjudicate fee waiver by emphasizing that "this Court has no record upon which to evaluate plaintiff's claims that it is entitled to a waiver"); see also *Ctr. for Pub. Integrity v. HHS,* No. 061818, 2007 WL 2248071, at *5 (D.D.C. Aug. 3, 2007) (noting that "mere inclusion" of web address in request insufficient to include all information on website as part of administrative record) (requester category context); FOIA Update, Vol. VIII, No. 1, at 10 ("OIP Guidance: New Fee Waiver Policy Guidance");

Coleman asserts here, as he has previously, that it was error on the part of the district court to rely on the improperly supplemented administrative record to find in favor of the Government.

We should mention here that the district court's Memorandum Order, the Government's filings before the district court, and its informal response brief before this Court have all wrongly asserted that it was not until Coleman's December 6, 2010 letter to the DEA that "for the first time" he requested a waiver of *all* fees. See Appeal Document #10, Informal Response Brief, at 26, *viz.*:

> "Although Coleman argues that he made a request for waiver of all fees by letter dated April 22, 2010, the record evidence demonstrates the contrary. *See* Coleman brief at p. 12. In fact, as explained below, at no point prior to his December 6, 2010 letter, had Coleman requested a waiver of all fees associated with his request. R. 23 at 4. Moreover, Coleman's April 22, 2010 letter did not request a waiver of all fees. See R. 1, Exhibit 8. In particular, *he did not ask for a waiver of review fees*, but instead asserted his belief that they were not applicable. Id. at p. 2." (Emphasis as in original)

While this issue is discussed and rebutted in detail in Coleman's informal opening brief, it is worth taking a moment to mention briefly again why the Government's argument has no merit. Coleman's April 22nd fee waiver request was sent to DEA after Coleman received the March 29th appeal decision letter from OIP (PEX #8) informing him, among other things, that DEA's action with respect to his fee category was not consistent with the law. OIP's March 29th letter also advised Coleman that he could contact DEA directly to discuss the fee issue and to inquire about the status of his remanded FOIA request. See PEX #8, *viz.*:

> "Further, if as you originally indicated in your request, you remain willing to pay fees up to a specific amount (but less than the total estimated by DEA) and you are willing to accept less than the complete processing of your request, please contact DEA directly.

---

FOIA Update. Vol. VI, No. 1, at 6 ("OIP Guidance: FOIA Counselor) (answering question of whether agency can supplement its rationale for denying fee waiver after requester files suit).

See 28 C.F.R. § 16.3(c) (allowing requester to specify an amount he is willing to pay). You may appeal any future adverse determination made by DEA. If you would like to inquire about the status of your remanded request, please contact DEA directly. If you are dissatisfied with my action on your appeal, you may file a lawsuit in accordance with 5 U.S.C. § 552(a)(4)(B)."

Coleman followed OIP's advice and on April 22nd, he sent a letter to the DEA. In the letter, Coleman requested a waiver of search and duplication fees, noting, parenthetically, that a review cost no longer applied. Coleman attached a copy of the OIP letter to his April 22nd letter to the DEA. See PEX #9, viz., "In return for waiving all fees for search and duplication ('review' cost is no longer applicable), I will consider the matter resolved satisfactorily.") (Emphasis and parenthetical clause as in original) Review costs, per se, are not permitted by the statute except for commercial-use requests, which, by reason of the OIP letter, no longer applied to Coleman's request.

Coleman's April 22nd letter offered several options to resolve the fee issue, including a statement that if the DEA was unable to "**waive all costs**," [emphasis added] it could, instead, send Coleman a revised estimate. (See PEX #9, April 22nd letter from Coleman to DEA, viz., "You may, instead, send me a revised estimate if you are unable to waive all costs.")

It also is worth noting that when Coleman sent his April 22nd letter to DEA, the only fee estimate for processing Coleman's FOIA request that had been levied by the agency, thus far, had been its original fee estimate of $1,780.75 that Coleman had appealed. This fee included a "review" cost for commercial-use requests – a cost that on appeal no longer was applicable since OIP had decided that the DEA's action with respect to fee categorization was not consistent with the law. It was, therefore, reasonable for Coleman to believe that even if he were not granted a fee waiver or a reduced fee, that DEA's revised fee estimate without the review cost likely would be less than his original promise of up to $1,000.00 that he still was willing to pay.

10

The DEA, however, failed to respond to Coleman's April 22nd fee waiver request until

after suit was filed when, by letter dated September 29, 2010 (PEX #10), DEA informed

Coleman that, among other things, his settlement offers were not reasonable, his fee waiver was

denied, he was still considered a commercial requester, and the original estimated fee was

erroneously calculated. A subsequent DEA letter dated November 22, 2010 (PEX #14), advised

that a new fee estimate for processing Coleman's request was $173,000.00. Thus, not only did

the DEA contumaciously and unlawfully[9] ignore the appeal decisions of OIP with respect to the

fee categorization of Coleman's request, but also, subsequent to the remanded request, it

increased the estimated processing fee almost ten-fold, from $1,780.75 to $173,000.00.

Although the fee waiver issue is the most blatant, there are other examples of incorrect

statements in the DEA response brief, *e.g.*, "He refused to pay any fees, even if he were deemed

a noncommercial requestor." (Appeal Document #10, at 28) This statement refers to Coleman's

December 6th response to the DEA's November 22nd letter that, among other things, contained

the revised fee estimate of $173,000.00. In his December 6th letter, contrary to *refusing* to pay

fees, Coleman referenced and repeated his April 22nd fee waiver request:

> "With respect to assessing the fee for processing my FOIA request, I repeat here what I
> asked for during the administrative phase of this case, namely, that all fees be waived
> because releasing this information to me and my subsequent publication of it in a journal
> article or in some other form of media will inform the public and the medical and
> scientific communities of important operations and activities of the government,
> specifically the manner in which the DEA and the FDA carry out drug scheduling
> provisions of the *Controlled Substances Act*." [Emphasis added] (See PEX #15 at 9)

---

[9] See 28 C.F.R. § 16.9(b), *viz.*, "If the adverse determination is reversed or modified on appeal, in whole or part, you will be notified in a written decision and your request will be reprocessed in accordance with that appeal decision." [emphasis added] On appeal to OIP, Coleman's FOIA request was remanded in full for reprocessing because DEA's actions with respect to fee categorization were found to not be consistent with the law.

Parenthetically, it would have been senseless for Coleman to agree to pay $173,000.00,

while at the same time he was in litigation with the Government and was anticipating a *de novo*

review of his fee waiver request by the district court, as required by the statute.[10] (See 5 U.S.C. §

552(a)(4)(A)(vii))

Rather than accurately report Coleman's comments about the issue of fees in his

December 6th letter, the Government's response brief, instead, offered a conclusory and

declarative statement for which there is no factual basis in the record, including in Coleman's

December 6th letter.[11]

## SUMMARY

In summary, Coleman wishes respectfully to remind the Court that he is not an attorney.

Given that a majority of cases coming before the Fourth Circuit are likely prepared by

professional attorneys, Coleman asks that he not be penalized in this respect for having had only

the benefit of the last year to study one particular law, the FOIA.

Coleman also wishes to apologize to the Court if he has repeated herein arguments and

points previously made. Coleman felt compelled to do so, however, by the baseless nature of the

Government's principal arguments and its attempt to deflect the Court's attention away from its

---

[10] As it turned out, the district court regrettably failed to perform its duty as required by the statute and, instead, relied on agency activity while litigation was underway to reach its conclusions.

[11] In its persistent attempt to paint Coleman's case with the fact pattern of *Pollack*, perhaps in hopes of achieving a similar outcome, the DEA informal response brief offers this sweeping but false statement as if it were true and as if it were stated, as such, by Coleman. Indeed, Coleman's original offer of $1,000.00 payment was never rescinded and even his April 22nd fee waiver request acknowledged Coleman's willingness to pay any and all appropriate fees. (See PEX #9, *viz.*, "You may, instead, send me a revised estimate if you are unable to waive all costs.") This is hardly what the Fourth Circuit found in *Pollack* and the Court, here, should take notice of the DEA's disrespectful attempt to mislead it into believing that Coleman, like Pollack, "explicitly said that he had no plans ever to pay such fees" (See *Pollack*, at III [8]). Despite the calumnious nature of such statements by DEA, Coleman's case differs significantly and materially from *Pollack*, as discussed in Coleman's opening brief, herein, and in the judicial record before the Court.

12

own failings in hopes, perhaps, of depicting the merits of Coleman's case as being similarly deficient with those noted by this Court in *Pollack*.

In advancing its arguments, the Government would have the Court ignore that a complaint was filed in the district court prior to the creation of the impermissible "supplemented" record relied upon by the Government and district court. It is impossible to view the use of this tactic as not being arbitrary and capricious, inasmuch as the Government's attorneys, as officers of the Court, are bound by canons of professional ethics to respect and uphold the law.

If, for example, the Court were to ignore Coleman's claim of exhaustion of administrative remedies and accept the Government's flawed argument that Coleman failed to appeal the agency's September 29, 2010 fee waiver denial or request a waiver of *all* fees until his December 6th letter, how would this, in turn, relieve the agency of its statutory obligation to respond to Coleman's April 22nd request for a waiver of search and duplication costs before suit was filed?

In its filings before the district court, as well as its filings before this Court, the Government has persistently acted as if Coleman had never filed suit and as if the administrative phase of his case continued unfettered by pending litigation. As we know from *Pollack*, only a district court for good reason shown can stay a judicial proceeding under 5 U.S.C. § 552(a)(6)(C)(i) to permit the Government additional time to process a FOIA request. The agency on its own, even with the agreement of the United States Attorney's Office ("USAO"), cannot do this. Yet, in the instant case, the agency and its attorneys from the USAO continued to proceed as if they had such authority and, having it and having exercised it, felt entitled to rely upon it to support and advance their case.

13

On September 28, 2010, several weeks after Coleman filed suit, Assistant United States Attorney (AUSA) Yiris Cornwall telephoned Coleman to request concurrence for an extension of time for the Government to file its Answer to Coleman's Complaint. At first, Coleman declined but agreed to the request after being assured by Cornwall that her policy and the policy of her office was to bring parties together to resolve differences and thus avoid further litigation. Convinced of the truthfulness of this claim, Coleman complied thereafter with all requests levied on him by Cornwall, including a request to elucidate his request, to identify and eliminate unneeded documents from the request, and even to confirm by official transcript Coleman's doctoral degree from George Mason University.

Over the course of two months Coleman continued to respond to Cornwall's telephoned requests that seemed to be aimed at resolving the dispute between the parties. Cornwall reassured Coleman from time to time that even if the language in her filings seemed negative to him, that there was still "room for negotiations" and that Coleman should continue to believe that he and the agency might be able to resolve their differences.

In the same period, Coleman received two letters directly from DEA, one dated September 29, 2010, and the second dated November 22, 2010. The first (PEX #10) denied Coleman's fee waiver request of April 22, 2010, and contumaciously rejected OIP's determinations with respect to Coleman's fee category status. The second letter (PEX #14) informed Coleman that the initial fee estimate of $1,780.75 was no longer valid and that if he wanted to pursue his FOIA request, he would have to pay a revised fee estimate of $173,000.00. This letter also asked Coleman to furnish additional information if he wished the agency to reconsider him a non-commercial requester.

14

**Noteworthy** is the fact that although the decisions in DEA's second letter (PEX #14) were adverse to Coleman's FOIA request, in that they provided a revised fee estimate almost ten-fold more than the original estimate and that, contrary to the OIP appeal decision, the DEA still considered Coleman a commercial requester, the letter by DEA's Senior Counsel William C. Little, Jr., neglected to include a statement that Coleman could appeal these adverse findings. Instead, Little's letter asked Coleman to respond directly to him and by December 6, 2010, if he wished to have DEA reconsider his fee category:

> "I ask that in view of the above, you provide: (1) a response to our inquiry regarding your commercial interest in the documents you request as it is defined above; and (2) a response as to whether you are willing to pay in advance, the estimated costs associated with your document request as outlined above, in the event that DEA were to determine that your request is not a commercial use request. We would appreciate a response as soon as possible, but no later than December 6, 2010. Please feel free to contact me at the above address if you have any questions."

Coleman responded in a 24-page letter dated December 6, 2010 (PEX #15), that, among other things, referred to -- and restated -- his earlier (April 22nd) request for a fee waiver. In addition, Coleman provided detailed responses to six analytical factors that must be considered in applying the statutory fee waiver standard found at 28 C.F.R. § 16.11(k) (July 2010 ed.)[12]. In his response to Little's letter, Coleman provided the following disclaimer in an effort to protect the viability and integrity of his judicial action:

> "By responding to your letter of November 22, 2010, I am not relinquishing my right to pursue litigation to obtain FOIA information pertaining the carisoprodol petition from DEA, nor am I in any way relinquishing my right to request the relief sought in my complaint filed August 19, 2010 in case No. 1:10-cv-927, *John J. Coleman v. U.S. Drug Enforcement Administration.* Moreover, by responding to your letter, I am not agreeing to reopen or continue the administrative record in this case, which effectively and legally terminated as of the filing of my judicial complaint on August 19, 2010. Should accord be reached between us as a result of negotiations or correspondence (such as this) occurring after August 19, 2010, such accord will not vitiate in any way the standing that

---

[12] As noted in the "Fee Waiver" section of the *U.S. Department of Justice Guide to the FOIA*.

15

I, the plaintiff in this case, have with respect to recovery of court costs and expenses from the DEA."

Despite the above, DEA and AUSA Cornwall used information obtained from these supposedly informal negotiations to the detriment of Coleman who had relied on the truthfulness of Cornwall's assurances that her policy and that of the USAO was to bring parties together for the purpose of reconciling differences and avoiding further litigation. In reviewing the grounds stated in the Government's filings before the district court and before this Court, it is clear that those filings rely almost exclusively on this cleverly constructed extrajudicial record to acquire and cite "evidence" for their claims. Coleman leaves it to the Court to judge the ethical aspects of this behavior by the aforementioned Government attorneys.

Even more disturbing is that the district court reached its conclusions after being fully apprised of record evidence showing beyond any doubt that the Government's claims were based almost entirely on facts garnered from the improperly supplemented administrative record constructed entirely *after* suit was filed. How the district court could permit this raises an important question as to whether the district court even read the Plaintiff's filings before rubber-stamping the Government's proposed Orders.

Beyond the district court's error by reason of *Pollack* in this matter, we raise here a serious question for the Court *sua sponte* to consider with respect to the above-described conduct of Justice Department attorneys Cornwall and Little who, it now appears, did not negotiate in good-faith with Coleman to resolve differences between the parties but, instead, to obtain information to advance spurious claims that otherwise might be barred by statute, Department of Justice Guidelines, and/or relevant case law in the Fourth Circuit.

16

The sentiments found in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) that Coleman cited in his informal opening brief are worth repeating here. In *Chevron*, the U.S. Supreme Court proposed a simple test to determine what Congress intended in the administrative enforcement of its statutes. If we know what Congress unambiguously intended in a statute, the Supreme Court said, then that's the law, period.

We know what Congress intended with the FOIA. It is unambiguous, perhaps one of the most unambiguous statutes we have. By no measure of law or reason was this intent followed by the Government in this case. The Fourth Circuit has an opportunity before it. It can reinforce the public's confidence in the FOIA; it can sanction the Government's improper actions; and by its action, it may prevent future cases like this from having to be litigated.

As stated above in a footnote and in the filings by DEA and the district court, there has been an effort on the part of the Government from the very beginning to characterize this case as being similar to *Pollack*. Except for finding that the district court erred in *Pollack* by concluding that Pollack failed to exhaust his administrative remedies once the case was pending in the district court, virtually all other material similarities between the two cases are imaginary.

That said, there is one other aspect of potential similarity with *Pollack* that is worth mentioning here for the Court to consider. In affirming the judgment of the district court in *Pollack*, the late beloved Fourth Circuit Judge Francis D. Murnaghan, Jr. offered a separate concurrence in which he stated:

> "I concur that Pollack had constructively exhausted his administrative appeals and so prevailed on that point, as indeed he should, given the extreme dilatoriness with which the Department of Justice responded to his requests. Taking over a year is not acting promptly.
>
> Yet, I also concur that Pollack's refusal to arrange for satisfaction of his fee obligations has led to a victory for the Department. It is not one to be proud of. Pollack's requests

17

were well within his rights under FOIA, and the Department's failure to acknowledge, never mind respond, to them promptly, met neither the letter nor the spirit of the statute.

Still Pollack was required to pay the fees. His annoyance at the treatment (or more accurately the non-treatment) his case was receiving from the Department of Justice is understandable but "two wrongs don't make a right."

The indignation of the Court for the Department's behavior in *Pollack*, expressed by Judge Murnaghan in the above statement, is palpable. Fortunately, some of the frustration expressed by Judge Murnaghan has been cured by the OPEN Government Act of 2007 in which certain fees no longer may be charged for some requests if an agency fails to respond within the statutory time limits. Unfortunately, in the instant case, this provision of the 2007 Act did not become effective until after Coleman filed his request.

Unlike Pollack, Coleman tried repeatedly "to arrange for satisfaction of his fee obligations," but at every turn the Government used (or misused) its discretionary authority to thwart his efforts. For example, the original estimated fee was $1,780.75. After Coleman appealed this (something that Pollack did *not* do), he followed the suggestion by OIP to discuss the fee issue directly with DEA. Coleman offered several fair and equitable options to satisfy his fee obligations (something that Pollack also did *not* do) in a letter dated April 22, 2010, that alternatively asked for a fee waiver. The agency ignored Coleman's offers and his fee waiver request and failed to respond until long after suit was filed when it refused all the offers as well as denied Coleman's fee waiver request. In the process, the agency advised that its initial fee estimate of $1,780.75 had been revised and increased ten-fold, to $173,000.00.

In paraphrasing the words of Circuit Judge Murnaghan, Coleman asks that members of this Court *not* give the Department another victory that *is not one to be proud of* by affirming the district court's findings. In *Pollack*, the Court had no alternative but to concur with the district

18

court's summary judgment ruling because the required fees were not paid and Pollack had not appealed or asked for a waiver of them. This, however, is not the case here. As Circuit Judge Murnaghan observed in *Pollack*, "[his] requests were well within his rights under FOIA, and the Department's failure to acknowledge, never mind respond, to them promptly, met neither the letter nor the spirit of the statute."

In the instant case, the very same may be said for Coleman's requests, as well as the Department's (*i.e.*, DEA's) failure to respond. The principal difference between *Pollack* and this case is that Coleman appealed his fee and fee status and later, after receiving the appeal decisions from OIP, Coleman asked DEA for a waiver of all applicable fees. Pollack took neither of these actions, much to the chagrin of the Fourth Circuit that opined in its review: "We note that if Pollack wished to avoid payment, he had several options at his disposal, none of which he pursued." (See *Pollack*, at III [8]) By comparison, Coleman pursued every option at his disposal, but to no avail.

Moreover, unlike Pollack, Coleman never refused to pay any fees and, indeed, even asked for a revised estimate if *all costs* could not be waived (See PEX #9, *viz.*: "You may, instead, send me a revised estimate if you are unable to waive all costs.")

## CONCLUSION

In conclusion, The Fourth Circuit is respectfully requested to reverse the verdict of the district court in whole and either order summary judgment for Coleman as a matter of law, or remand this case in full to the district court for a trial or other suitable disposition. Finally, in view of the above-described arbitrary and capricious actions of the Government's attorneys in this case, Coleman respectfully requests the Court to issue a written finding of sufficient facts as to warrant asking the Special Counsel, pursuant to 5 U.S.C. § 552(a)(4)(F), to conduct an

19

investigation to determine if disciplinary action is warranted.

Thank you for your service to our nation.

Respectfully submitted this __9th__ day of November 2011

John J. Coleman, PhD
Plaintiff-Appellant, *Pro se*
6981 Tepper Drive
Clifton, VA 20124-1600
Tel: 703-502-9307
Email: jcoleman30@cox.net

20

# CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on ___*Nov. 9*___, 2011, I served a copy of this Informal Brief by First Class
U.S. Postal Mail on the following parties addressed as shown below:

**Ms. Yiris E. Cornwall**
**Office of U.S. Attorney**
**2100 Jamison Avenue**
**Alexandria, Virginia 22314-5194**

**Ms. Julie Ann Edelstein**
**Office of U.S. Attorney**
**2100 Jamison Avenue**
**Alexandria, Virginia 22314-5194**

**John J. Coleman, PhD**
**Plaintiff-Appellant,** *Pro se*
**6981 Tepper Drive**
**Clifton, VA 20124-1600**
**Tel: 703-502-9307**
**Email: jcoleman30@cox.net**